IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>         Plaintiff,<br><br>     vs.<br><br>LEIALOHA J., in her capacity as parent and legal guardian of PRESH'ES J.,<br><br>         Defendants. | ) Civ. No. 08-00077 ACK-BMK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER AFFIRMING ADMINISTRATIVE DECISION**

On July 21, 2008, the Hawaii Department of Education ("DOE") filed an Opening Brief challenging an administrative decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The DOE appeals the Hearing Officer's determination that Leialoha J. ("Mother") and Presh'es J. ("Student") (collectively "Defendants") were the prevailing party at the hearing. For the reasons set forth below, the Court affirms the Hearing Officer's ruling.

**BACKGROUND**

**A.   Legal Background**

The IDEA was enacted by Congress to, among other things, "ensure that all children with disabilities have

1

available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) & (B). The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA. See Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1049 (9th Cir. 2002).

Under the IDEA, state and local education agencies are required to identify children with disabilities and develop an annual individualized education program ("IEP") for every child. 20 U.S.C. § 1414. An IEP is a comprehensive document developed by a team of parents, teachers, and other school administrators setting out the goals for the child, and designating the special education and related services that are necessary to reach those goals. Id. § 1414(d). The IDEA also provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program, including an opportunity for an impartial due process hearing for complaints, and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. Robb, 308 F.3d at 1049.

**B.   Procedural Background**

On June 12, 2007, Defendants filed a request for a due process hearing pursuant to the IDEA with the DOE.[1] At the time of the request, Student was eleven years old and had attended sixth grade at Kahuku Elementary School during the 2006-2007 school year. She was set to attend Kahuku High and Intermediate School for the 2007-2008 school year. Student is visually impaired and receives special education services under the IDEA. See Administrative Record on Appeal ("ARA") at 4, 13. She has also been diagnosed with a chronic major depressive disorder. Id. at 82. Defendants' due process request alleged several substantive and procedural violations of the IDEA. Id. at 1-5. On June 21, 2007, Defendants amended their original request to add a request for mileage reimbursement. Id. at 17-19.

As a result of Defendants' request, a Hearing Officer conducted administrative proceedings in the Office of Administrative Hearings of the Department of Commerce and Consumer Affairs for the State of Hawaii. At a pre-hearing conference on July 9, 2007, the parties agreed to extend the hearing decision date.[2] Id. at 23. The hearing commenced on

---

[1] Although an addendum to the due process request is dated June 6, 2007, the request appears to have been signed and sent to the DOE on June 12, 2007.

[2] The decision date was initially set for August 26, 2007. See ARA at 23. The parties first agreed to extend the decision date to December 21, 2007. Id. At Defendants' request, the

3

November 19, 2007, and was further conducted on November 20 and 21, 2007. The administrative proceedings culminated in the Hearing Officer's issuance of Findings of Fact, Conclusions of Law, and Decision ("Administrative Decision") on January 4, 2008.

On February 4, 2008, the DOE appealed the Administrative Decision to the Circuit Court of the First Circuit, State of Hawaii. Defendants timely removed the action to the United States District Court for the District of Hawaii on February 20, 2008. The Administrative Record was filed in this Court on March 12, 2008.[3]

On July 21, 2008, the DOE filed an Opening Brief ("OB") in support of its appeal. Defendants filed an Answering Brief ("AB") on August 21, 2008. On September 4, 2008, the DOE filed a Reply. The Court held a hearing to address the DOE's appeal on October 20, 2008.

**C.   The Administrative Decision[4]**

The Hearing Officer noted that on the first day of the hearing, the parties stipulated to limit the scope of the hearing

---

decision date was later extended to January 9, 2008. Id. at 81-82.

[3] On June 27, 2008, Defendants filed a Motion for Summary Judgment or in the Alternative to Dismiss; however, the Motion was later withdrawn.

[4] The Administrative Decision contains detailed findings of fact and conclusions of law. This summary is not meant to be exhaustive.

to the issues set out in Concern #3 and Proposed Resolution #3 of Defendants' amended due process request. See Administrative Decision at 7; ARA, Resp. Ex. 75, at 189. Concern #3 stated that Student's therapist had recommended an increase in Student's hours of mental health services during her transition from elementary school to intermediate school, to be provided by a therapist with certain qualifications; however, no such services had been provided.[5] See Administrative Decision at 5. Proposed Resolution #3 asked that the DOE immediately provide Student with nine hours[6] per week of mental health services, conducted by a therapist with particular qualifications, during the summer of

---

[5] Specifically, Concern #3 provided:

> [Student's] therapist, [psychologist R.H.], has been recommending an increase in [Student's] hours of therapy and level of service for some time. In May 2007 she wrote a letter that was provided to [Student's] IEP team which recommended that during [Student's] transition from elementary school, therapy be provided three hours three days a week, tapering down after she had successfully adapted. [Psychologist R.H.] stated "the therapist needs to be a female who has experience working with children with visual disabilities. Due [to Student's] complicated and varied needs it is recommended that the provider be a psychologist, licensed clinical social worker (LCSW) or {LMFT} licensed marriage and family therapist." To date, no such therapy has been provided.

ARA at 5.

[6] At the hearing, however, Defendants clarified that they were now seeking four hours per week of mental health services, rather than the nine hours in their original request. See Hr'g Tr. 5:24-6:5, November 19, 2007.

2007.⁷  Id.  Accordingly, the Hearing Officer determined that the "questions are whether the DOE provided Student with an offer of [FAPE] during the summer of 2007, and the appropriate amount of mental health services Student currently needs."⁸  Id. at 7.

The Hearing Officer noted that in an August 21, 2006 neuropsychological evaluation, the neuropsychologist recommended that Student receive mental health services to build self-esteem and deal with anxieties and depression.  Id. at 3.  An IEP developed for Student on April 10-16, 2007 ("April IEP"), provided for orientation and mobility services, special education, vision services, and transportation, among other services.  Id.  However, the April IEP did not offer any mental health services.  Id. at 3-4.  On May 10, 2007, Student's treating psychologist ("psychologist R.H.") sent a letter to the IEP team recommending that Student be provided with nine hours

---

⁷ Proposed Resolution #3 stated:

> DOE to immediately provide a therapist for [Student] who meets or exceeds [Psychologist R.H.'s] recommended qualifications, for a minimum of three times per week, three hours per session, during the 2007 summer to prepare her for the transition from elementary school, and continuing at one time per week, one hour per session during the 2007-2008 school year to address her mental health needs.

ARA at 5.

⁸ As discussed infra in footnote 11, the Court finds that the Hearing Officer's decision to frame the first issue as a FAPE determination was appropriate.

per week of mental health services to assist with her upcoming transition to intermediate school ("May 2007 Letter").  Id. at 5.

The Hearing Officer found that on July 31, 2007, Student's second day at the intermediate school, she had a meltdown.  Id. at 4, 8.  Student "refused to leave Mother's truck, curling up in a ball and wailing."  Id. at 4.  On August 7, 2007, Student's IEP team added 30 minutes per week of mental health services (amounting to 120 minutes per month) to Student's IEP.[9]  Id. at 5.  Between the April and August IEPs, the Hearing Officer found, Student was not provided with any mental health services.  Id. at 8.

The Hearing Officer concluded that the lack of mental health services in Student's April IEP was not appropriate.  Id. at 9.  He pointed out that Student had been diagnosed with depression and anxieties, and had a history of difficulties with transitions.  Id.  The DOE's failure to address Student's mental health needs in the April IEP contributed to her meltdown in July, the Hearing Officer concluded, and constituted a substantive breach of a FAPE.  Id.

Nevertheless, the Hearing Officer further concluded that the amount of mental health services provided through the

---

[9] The August 7, 2007 IEP and a subsequent IEP dated August 27, 2007 (collectively "August IEPs") also changed Student's placement so that she would be in special education classes for all core subjects and participate with non-disabled peers in two elective classes.

7

August IEPs - 30 minutes per week - was appropriate.  He noted that Student's meltdowns had either ceased or decreased;[10] psychologist R.H. testified that Student no longer needed nine hours per week of intensive mental health services because her anxiety had decreased; and Student's grades had improved from the first to the second quarter of the 2007-2008 school year, which is evidence of a successful adjustment.  Id.

        Thus, the Hearing Officer ordered that "Defendants' claims for relief be granted" to the extent that "the DOE did not provide Student a FAPE" during the summer of 2007, and Defendants "shall be deemed the prevailing party in this matter."  Id. at 10.  However, the Hearing Officer denied Defendants' request for a therapist meeting the qualifications described in the May 2007 Letter.  Id.  Additionally, in light of his finding that the mental health services offered in the August IEPs were appropriate, the Hearing Officer denied Defendants' request for mental health services to the extent recommended in the May 2007 Letter.  Id.

---

[10] The Hearing Officer only described one meltdown - the one that occurred on July 31, 2007.  However, he noted that there was conflicting testimony at the hearing as to whether Student had any meltdowns after mental health services were added to her IEP in August of 2007.  See Administrative Decision at 5.  Although the school psychologist and another specialist testified that Student had no further meltdowns, Mother testified that Student still had less severe meltdowns.  Id.

8

**STANDARD**

In evaluating an appeal of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)©.

This statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." See Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982). Rather, "due weight" must be given to the findings in the administrative proceedings. Id.

The amount of deference given to an administrative hearing officer's findings is a matter of discretion for the court. See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). The court must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue, but the court is free to accept or reject the findings in part or in whole. See Capistrano, 59 F.3d at 891. When exercising its

discretion to determine what weight to give the hearing officer's findings, the court may examine the thoroughness of those findings and accord greater deference when the findings are "thorough and careful."  Id.; Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).

## DISCUSSION

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." See 20 U.S.C. § 1415(i)(3)(B).  The sole issue on appeal is whether the Hearing Officer properly determined that Defendants were the prevailing party in the administrative action.[11]

---

[11] The DOE also suggests that the Hearing Officer exceeded the scope of his authority in ruling that Student was denied FAPE during the summer of 2007.  Specifically, the DOE contends that the issue of whether the lack of mental health services constituted a denial of FAPE was not addressed in Defendants' due process request or agreed upon at the commencement of the hearing.  This argument fails.  The Court finds that it was appropriate for the Hearing Officer to consider whether the lack of mental health services constituted a denial of FAPE.  First, in order to assess Student's current mental health needs, the Hearing Officer had to consider what services were necessary to provide her with a FAPE.  Second, in Concern #3 and Proposed Resolution #3 of Defendants' due process request, Defendants essentially allege that Student is being denied FAPE because she is not receiving the mental health services necessary to meet her needs, although the term FAPE is not explicitly used.  Third, at the outset of the hearing, Defendants' counsel specifically asked the Hearing Officer whether a finding of a denial of FAPE would be strictly limited to the issue of mental health services.  See Hr'g Tr. 6:21-6:23, Nov. 19, 2008.  Although the Hearing Officer did not directly respond to the question, he clarified with the parties that there had been no stipulation to any denial of FAPE. Id. at 10:17-11:1.  Thus, the DOE was on further notice that

The United States Court of Appeals for the Ninth Circuit has defined a "prevailing party" as one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" Parents of Student W. v. Puyallup Sch. Dist. No. 3, 31 F.3d 1489, 1498 (9th Cir. 1994) (alteration in original) (emphasis added) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "The success must materially alter the parties' legal relationship, cannot be de minimis and must be causally linked to the litigation brought." Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 825 (9th Cir. 2007) (citations omitted); see also Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1034-37 (9th Cir. 2006). A district court has narrow discretion to deny fees in claims brought under the IDEA. Park, 464 F.3d at 1034; Kletzelman v. Capistrano Unified Sch. Dist., 91 F.3d 68, 70 (9th Cir. 1996).

The Court finds that Defendants are entitled to prevailing party status. See Park, 464 F.3d at 1034; Parents of Student W., 31 F.3d at 1498. Defendants requested a hearing in part to require the DOE to provide mental health services to ease

---

whether or not FAPE was denied would be an issue to be determined by the Hearing Officer. Finally, the Court notes that the DOE's argument was not addressed in the Opening Brief; it was raised for the first time in the Reply. Local Rule 7.4 provides that a "reply must respond only to arguments raised in the opposition" and "[a]ny argument raised for the first time in the reply shall be disregarded." See L.R. 7.4.

Student's transition to intermediate school.  <u>See</u> Administrative Decision at 7.  The Hearing Officer found that the lack of any mental health services in Student's April IEP was inappropriate.  <u>Id.</u> at 9.  The Hearing Officer further concluded that the DOE's failure to provide any mental health services during the summer of 2007 constituted a substantive breach of FAPE.  <u>Id.</u>  He also found that 30 minutes per week of mental health services was an appropriate amount to meet Student's current needs.  <u>Id.</u> at 9.  By obtaining these rulings, Defendants achieved some of the benefit they sought in initiating the hearing.  <u>See</u> <u>Parents of Student W.</u>, 31 F.3d at 1498.  That is, the Hearing Officer sent a clear message to the DOE that it must address Student's mental health needs in her IEP.  As a result of the FAPE ruling, Student's IEP team is on notice that she may need additional mental health services to assist her with difficult transitions.  In addition, the Hearing Officer's ruling essentially granted 30 minutes of the nine hours per week of mental health services sought by Defendants in their amended due process request.

        The Court further notes that the issue on which Defendants succeeded was significant.  <u>See</u> <u>Parents of Student W.</u>, 31 F.3d at 1498.  Indeed, the Ninth Circuit has recognized that obtaining a determination that a child was denied a FAPE is "the most significant of successes possible" under the IDEA.  <u>See</u> <u>Park</u>, 464 F.3d at 1034.  Defendants' success was not purely

technical or de minimus; rather, they prevailed on an issue that goes to "the very essence" of the IDEA.  See Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 373 F.3d 857, 864 (9th Cir. 2004); Park, 464 F.3d at 1036.

Moreover, the Ninth Circuit has suggested that a denial of FAPE alone is sufficient to confer prevailing party status. In Park v. Anaheim Union High School District, the Ninth Circuit held that a district court abused its discretion in concluding that a mother and her disabled child were not the prevailing party after a hearing officer found that the child was denied FAPE during certain time periods and ordered compensatory education services.  Park, 464 F.3d at 1030-31, 1034.  The Park court stated:

> The determination by the Hearing Officer and the district court that [the child] was denied a free and appropriate public education for the 2001-2002 extended school year and for September 2002 through November 2002 - <u>even setting aside the other issues on which Appellants prevailed</u> - is the most significant of successes possible under the [IDEA].[12]

Id. at 1036 (emphasis added).  The following year, in V.S. v. Los Gatos-Saratoga Joint Union High School District, the Ninth

---

[12] The DOE attempts to distinguish Park on the grounds that it involved a denial of eligibility and affected the relationship between the school and the parents in that the school would have to do an assessment before changing the student's eligibility status.  See OB at 10-11 n.6.  However, the Court relies on Park not because it is factually analogous, but because it suggests that the Ninth Circuit would find a denial of FAPE alone sufficient to confer prevailing party status under the IDEA.

13

Circuit noted that this statement in Park "lends strong support" to the position that a FAPE determination alone "might well be dispositive" of prevailing party status.  See 484 F.3d 1230, 1234 n.3 (9th Cir. 2007).

Park and Los Gatos-Saratoga suggest that Defendants' success on the FAPE determination alone entitles them to prevailing party status.  The Court notes that other district courts have interpreted Park and Los Gatos-Saratoga in a similar fashion.  See Natalie M. v. Dep't of Educ., Civ. No. 06-00539 JMS/BMK, 2007 WL 2110510, at *1, *3 (D. Haw. July 19, 2007) (relying on Park in holding that plaintiffs were the prevailing party where a hearing officer found a denial of FAPE but did not order the remedy sought by plaintiffs); S.J. v. Issaquah Sch. Dist. No. 411, No. C04-1926RSL, 2007 WL 2703056, at *16 (W.D. Wash. Sept. 12, 2007) (noting that Park and Los Gatos-Saratoga indicate that a denial of FAPE alone could entitle a plaintiff to prevailing party status).

Nevertheless, the DOE argues that Defendants received none of the benefit they sought in initiating the hearing because the Hearing Officer denied their requested remedy.  See OB at 7; Administrative Decision at 9.  The DOE's argument ignores the fact that the Hearing Officer recognized two issues in dispute: (1) whether Student was offered a FAPE during the summer of 2007; and (2) the amount of mental health services Student currently

14

needed.  See Administrative Decision at 7.  There is no question that Defendants prevailed on the first issue regarding FAPE.  A prevailing party need only achieve some of the benefit it sought in initiating the action.  See Parents of Student W., 31 F.3d at 1498.  Additionally, "a prevailing party need not succeed on all issues, but only on 'any significant issue.'"  Park, 464 F.3d at 1035 (emphasis in original) (quoting Parents of Student W., 31 F.3d at 1498).  Moreover, the Hearing Officer ruled that Student was entitled to 30 minutes of the nine hours per week of mental health services sought in Defendant's amended due process request.

   The DOE further argues that Defendants are not entitled to prevailing party status because the Administrative Decision had no effect upon the DOE's behavior.  As the DOE correctly points out, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  See Farrar v. Hobby, 506 U.S. 103, 111-12 (1992); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001).  In the present context, this means that a hearing officer's order must give the parents and child the ability to require the school district "to do something [it] would otherwise not have to do."  See Los Gatos-Saratoga, 484 F.3d at 1233

(quoting Fischer v. SJB-P.D. Inc., 214 F.3d 115, 1118 (9th Cir. 2000)).  The DOE argues that the Hearing Officer's ruling did not require it to do something it would otherwise not have to do because in August of 2007, the DOE voluntarily added 30 minutes per week of mental health services to Student's IEP.  Thus, according to the DOE, it was already providing the amount of mental health services ordered in the Administrative Decision.  The DOE misses the point: It is the Hearing Officer's FAPE determination that imposed an extra, ongoing obligation on the DOE.  As a result of that ruling, the DOE must now address Student's mental health needs in future IEPs, and ensure those needs are met during times of transition.

      Moreover, Defendants are not arguing that the DOE's voluntary change in conduct alone entitles them to prevailing party status.  The Supreme Court of the United States rejected the "catalyst theory"[13] in Buckhannon, clarifying that there must be a "judicially sanctioned change in the legal relationship of the parties."  Buckhannon, 532 U.S. at 605.  Although the DOE voluntarily added mental health services to Student's IEP (notably, in the days following her meltdown), Defendants only

---

[13] The "catalyst theory" posits that a "plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," even if the plaintiff has "failed to secure a judgment on the merits or a court-ordered consent decree."  Buckhannon, 532 U.S. at 600-01.

16

became entitled to attorneys' fees as the prevailing party after the Hearing Officer imposed his judicial imprimatur on the change.  See T.N. v. Seattle Sch. Dist., No. 1, 474 F.3d 1165, 1171, 1173 (9th Cir. 2007) (relying upon Buckhannon to find that a parent who resolved her differences with a school district through a settlement agreement needed judicial sanction of that agreement in order to be a prevailing party).  Even if the parties in this case had reached a formal settlement prior to the due process hearing, Defendants would still be permitted to establish their entitlement to attorneys' fees as a prevailing party.  See Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1285 (9th Cir. 1991).

In sum, the Court concludes that Defendants were the prevailing party at the administrative hearing and are entitled to reasonable attorneys' fees and costs.  Defendants shall submit any application for fees to the Magistrate Judge within twenty (20) days of this Order.  The Court notes that the Magistrate Judge has discretion to consider Defendants' level of success at the administrative hearing in determining the amount of the fee award.  See Van Duyn, 502 F.3d at 826; Aguirre v. Los Angeles Unified Sch. Dist., 461 F.3d 1114, 1118 (9th Cir. 2006).

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Administrative Decision and finds that the Hearing Officer

properly conferred prevailing party status on Defendants. Any application for fees shall be submitted to the Magistrate Judge within twenty (20) days of this Order. The Court directs the Clerk of Court to enter judgment in favor of Defendants.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, October 29, 2008.



_____
Alan C. Kay
Sr. United States District Judge

Dep't of Educ. v. Leialoha J. et al., Civ. No. 08-00077 ACK-BMK, Order Affirming Administrative Decision.